**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 23 B 4039 |
| | ) | |
| ANTOINETTE PINSON, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM ORDER DENYING DEBTOR ANTOINETTE PINSON'S MOTION
FOR RELIEF FROM VIOLATIONS OF AUTOMATIC STAY AS TO PROPERTY OF
THE 11 U.S.C. 362(A) BANKRUPTCY ESTATE (EOD 58)**

This matter comes before the court on the motion for relief from violations of automatic stay as to property of the 11 U.S.C. 362(A) bankruptcy estate ("Stay Violation Motion") filed by Antoinette Pinson ("Debtor").  The court heard the Stay Violation Motion, entered an order granting in part and denying in part, and continued it for further hearing.  At that continued hearing, the court issued a scheduling order allowing time for Debtor to file a supplement in support of the Stay Violation Motion, the respondent to file a response and Debtor to file a reply.  The parties each requested additional time, which the court permitted.  After the filings were complete, the court took the matter under advisement.

Having reviewed the papers filed and considered the applicable law, the court will deny the Stay Violation Motion.

## I.    JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper under 28 U.S.C. § 1409(a).

## II.    BACKGROUND

Debtor had filed a petition for relief under chapter 13 and commenced a bankruptcy case on January 3, 2023, just a few months before filing this case.  *See* Case No. 23 B 58 ("Prior

Case").  The chapter 13 Trustee brought a motion to dismiss the Prior Case on several grounds, including failure to timely file a plan, schedules or statement of financial affairs and failure to attend the required meeting of creditors.  The court granted the motion to dismiss the Prior Case on March 9, 2023.

Less than three weeks later, Debtor again filed for relief under chapter 13 of the Bankruptcy Code, commencing this case on March 27, 2023 (the "Petition Date").  Although the Prior Case was pending within the past year and had been dismissed, Debtor did not file a motion to extend the automatic stay in this case.

About a week after the Petition Date, U.S. Bank National Association ("Bank") filed a motion for relief from the automatic stay in order to pursue its nonbankruptcy remedies with respect to 1615 S 15th Avenue in Maywood, Illinois ("Maywood Property").  The court granted the Bank's motion on April 17, 2023.  *See* Case No. 23 B 4039, EOD 15.[1]

Debtor did not file a plan, schedules or statement of financial affairs with her petition.  Instead, she filed all of these documents on May 11, 2023,[2] the 45th day after the Petition Date.  *See* 11 U.S.C. § 521(i)(1) ("if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition").

Debtor listed her property on Schedule B and exempted it on Schedule C.  In relevant part, she listed the following property:

---

[1] All further citations to docket entries are in Case No. 23 B 4039.

[2] Debtor filed her Statement of Financial Affairs on May 12, 2023 at 12:01 a.m.

| Asset | Value | Exempted |
|---|---|---|
| Stove, dishwasher, refrigerator, washer/dryer ("household goods") | $1,500 | $1,500 |
| Televisions, computers and music collection | $2,000 | N/A |
| Paintings | $500 | $200 |
| Treadmill, bicycle and health rider | $1,000 | $1,000 |
| Fur coat | $1,000 | N/A |
| Gold ring and earring | $1,000 | $700 |

Debtor filed amended schedules on December 4, 2023, listing the following property on amended Schedule B and exempting it on amended Schedule C:

| Asset | Value | Exempted |
|---|---|---|
| Furniture | $2,214.96 | $2,214.96 |
| Televisions, computers and music collection | $2,000 | N/A |
| Paintings | $500 | $200 |
| Treadmill, bicycle and health rider | $1,000 | $1,000 |
| Fur coat | $1,000 | N/A |
| Gold ring and earring | $1,000 | $700 |

After obtaining relief from the stay and returning to state court to pursue its remedies, the Bank evicted Debtor and her husband from the Maywood Property on or about November 3,

2023.  The Bank changed the locks on the house and obtained possession of all of the personal property inside.

According to the declaration of Michael Olszewski ("Olszewski"), the Bank engaged his company Areawide Realty Corporation to provide property management services for the Maywood Property.  Olszewski emailed Debtor's counsel on November 8, 2023, requesting that he provide a date and time for Debtor and her non-filing spouse ("Debtor's Husband") to retrieve their personal belongings.  Three times over the next few weeks, Debtor's Husband contacted Olszewski and stated that he was attempting to hire a moving company.  On December 11, 2023, Debtor's Husband requested a three-day time frame for moving.  Olszewski eventually agreed to an eight-hour window, and his company appeared with its moving vendor at the Maywood Property on December 20, 2023.  On that date, Debtor's Husband arrived at the Maywood Property without a moving company and requested access to retrieve small items.  Olszewski cancelled the move.  The next day, Debtor filed the Stay Violation Motion.

At the initial hearing on the Stay Violation Motion on December 27, 2023, Debtor's counsel stated that "[a]ll the property that's locked up I've actually included in their schedules A and B and the other schedules, and it's all locked up[.]"  EOD 83, Transcript of Zoom Proceedings ("December Tr.") at 5.  Debtor requested time to recover her property, and the Bank acknowledged that "[w]e want them to get their property.  We're happy to make more arrangements with them."  *Id.* at 10.

At that initial hearing, the court granted the Stay Violation Motion in part.  The court ordered Debtor and the Bank to agree to and schedule a date within two weeks.  "On that date, Debtor will have access to the [Maywood] Property for a ten (10) hour period for the purpose of the removal of personal property and any property of the bankruptcy estate[.]"  EOD 64.  The

4

court then continued the Stay Violation Motion for three weeks "to see where and if the parties

are going forward with anything else, including those allegations [regarding Debtor's request for

sanctions]."  December Tr. at 25.

Three weeks later, the parties reported that Debtor was able to move out of the Maywood

Property.  Debtor asked the court to continue the Stay Violation Motion in order to put together a

request for sanctions based on her contention that the Bank "kept them out of their property for

60 days[.]"  EOD 84, Transcript of Zoom Proceedings ("January Tr.") at 4.  The court entered a

scheduling order allowing time for Debtor to file an itemization of damages ("Itemization"), for

the Bank to file a response ("Response") and for Debtor to file a reply ("Reply").

In her Itemization, Debtor alleged that the Bank "took control of the aforementioned

personal property on November 3, 2023, and have for in excess of 60 days denied and/or simply

not provided the Debtors access to use retrieve and/or remove any property including clothes,

money, medications and/or other necessities of the Debtor or the furniture which secures the debt

of the creditor Ashley Furniture."  Itemization at ¶ 4.  She alleged that she and her non-debtor

spouse incurred the following expenses:

| Description | Amount |
| --- | --- |
| Hotel and related costs | $10,082.42 |
| Food, clothes and medicine related expenses | $    907.00 |
| Movado watch | $    995.00 |
| Attorney's fees | $ 8,137.50 |

*Id.* at ¶¶ 10-12.

5

Debtor argued that the automatic stay had terminated with respect to actions taken against herself and her property, but not against property of the estate.  She sought damages for the Bank's willful violation of the stay pursuant to 11 U.S.C. § 362(k).[3]

In addition to actual damages and attorney's fees, Debtor requested that the court award punitive damages in the amount of $100,000.00 and costs.

### III.   DISCUSSION

**A. The Automatic Stay Terminated Thirty Days After Debtor Filed This Bankruptcy Case**

Debtor had a single case pending within the year before she filed this case, and the court dismissed that Prior Case.  Because Debtor did not file a motion to extend stay in *this* case, the automatic stay terminated on April 26, 2023, by operation of § 362(c)(3)(A):

> (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--
>
> > (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case[.]

Debtor argues that since she did not bring a motion to extend the stay, it expired under § 362(c)(3)(A) 30 days after she filed her petition *only as to her and her property, but not as to property of the estate*.  When the Bank evicted Debtor and Debtor's Husband, it exercised control over the personal property left at the Maywood Property and consequently violated the stay as to property of the estate.

---

[3] Debtor actually cited § 362(h) in support of her request for damages.  In 2005, Congress amended the Bankruptcy Code and renumbered § 362(h) to § 362(k).

In support of her argument, Debtor relies on the reasoning in *In re Jones*, 339 B.R. 360

(Bankr. E.D.N.C. 2006). *Jones* held that § 362(c)(3)(A)

> terminates the stay with respect to actions taken against the debtor and against
> property of the debtor, *but does not terminate the stay with respect to property of
> the estate. See In re Johnson*, 335 B.R. 805, 806 (Bankr. W.D. Tenn. 2006)
> ("[w]hen read in conjunction with subsection (1), ... the plain language of §
> 362(c)(3)(A) dictates that the 30–day time limit only applies to 'debts' or
> 'property of the debtor' and not to 'property of the estate.' ") (335 B.R. at 806).
> *See also Baldassaro*, 338 B.R. at 184–85 (issue discussed but not decided).

*Id.* at 365 (emphasis added).

Having asserted that the Bank violated the automatic stay as to property of the estate,

Debtor seeks actual damages of $12,000, costs of $313, punitive damages of either $75,000

(Reply) or $100,000 (Itemization) and attorney's fees of $11,000.  The burden of proof to show a

violation of the stay and resulting damages is on the Debtor.  *See In re Ohm*, No. 15-60029, 2020

WL 4810066, at *2 (Bankr. N.D. Ohio July 31, 2020) ("Debtor bears the burden of proof of a

stay violation by a preponderance of the evidence.").

The Code section that authorizes damages for violation of the automatic stay is 11 U.S.C.

§ 362(k):

> (k)(1) Except as provided in paragraph (2), an individual injured by any willful
> violation of a stay provided by this section shall recover actual damages,
> including costs and attorneys' fees, and, in appropriate circumstances, may
> recover punitive damages.

In general, the Bank does not dispute Debtor's factual allegations.  It focuses instead on

the court order granting it relief from the stay to proceed with the eviction.  The Bank also asserts

that *Jones* and its reasoning have been rejected by three bankruptcy judges in the Northern

District of Illinois.  *See In re Wade*, 592 B.R. 672 (Bankr. N.D. Ill. 2018) (Hunt, J.)[4]; *In re*

---

[4] The District Court docketed an appeal from *Wade* on June 12, 2018, and then stayed briefing because the Court of
Appeals provisionally accepted a direct appeal.  The Court of Appeals dismissed the direct appeal on June 14, 2019.
*In re Wade*, 926 F.3d 447 (7th Cir. 2019).  On March 9, 2020, the Supreme Court denied a petition for writ of

*Daniel*, 404 B.R. 318 (Bankr. N.D. Ill. 2009) (Wedoff, J.); *In re Curry*, 362 B.R. 394 (Bankr. N.D. Ill. 2007) (Schmetterer, J.). *Jones* has also been rejected in its own district. *See In re Dev*, 593 B.R. 435 (Bankr. E.D.N.C. 2018). *But see generally Rose v. Select Portfolio Serv'g, Inc.*, 945 F.3d 226, 230 (5th Cir. 2019) ("after reviewing the plain language of the provision and the context of the provision within § 362, we conclude that § 362(c)(3)(A) terminates the stay only with respect to the debtor; it does not terminate the stay with respect to the property of the bankruptcy estate").

The court need not take a position on whether the stay terminated only as to Debtor and her property or also as to property of the estate. Whether or not the stay remained in place as to property of the estate, the personal property that Debtor claims was held by the Bank and for which she seeks actual damages *was not property of the estate at the time of the eviction on November 3, 2023.*

### B. Debtor Did Not Establish that She Was Injured by the Bank's Control over Property of the Estate

Debtor's personal property became property of the estate on the filing date. 11 U.S.C. § 541(a). She listed a number of items on Schedule B, and then exempted much of that property on Schedule C.[5] When Debtor claimed exemptions in her scheduled property on May 11, 2023, and no party in interest timely objected to her exemptions, all of those items were pulled out of the bankruptcy estate and returned to their prior status as property of the debtor. *See Schwab v. Reilly*, 560 U.S. 770, 775 (2010) ("[T]he Federal Rules of Bankruptcy Procedure require

---

*certiorari*. *Wade v. Kreisler Law, P.C.*, 140 S. Ct. 1293 (2020). About three months later, the District Court entered a scheduling order providing for briefs on the merits of the appeal. Appellants filed their reply brief on August 7, 2020. Since then, appellants have filed four motions for leave to file supplemental authority, each of which have been granted.

[5] Debtor amended Schedules B and C during the period between the eviction and her recovery of the property. The amendments are not material to this analysis.

interested parties to object to a debtor's claimed exemptions within 30 days after the conclusion of the creditors' meeting held pursuant to Rule 2003(a). If an interested party fails to object within the time allowed, a claimed exemption will *exclude the subject property from the estate*[.]") (citation omitted) (emphasis added); *In re Trujillo*, 485 B.R. 238, 245 (Bankr. D. Colo. 2012) ("Once a debtor claims an exemption in the property, and the deadline passes for lodging an objection to the exemption, or the objection is lodged but overruled, the exemption becomes final and the property ceases to be 'property of the estate.' It then reverts to its pre-bankruptcy status as 'property of the debtor.'") (citations omitted).

Regardless of whether the court agrees with Debtor and follows *Jones* or agrees with the Bank and rejects it, even the Debtor acknowledges that after 30 days the automatic stay terminated as to "property of the debtor." When the time for objections to her exemptions passed in the middle of June 2023, all of the property that Debtor exempted on Schedule C was "property of the debtor." This was long before the eviction on November 3, 2023. The only property that was "property of the estate" on that date was the property listed in Schedule B and *not* exempted on Schedule C.

Assuming that the personal property Debtor did not exempt was kept at the Maywood Property – and there is no evidence one way or the other, so it is only an assumption – the eviction on November 3, 2023, would have prohibited Debtor from accessing only the following property of the estate: televisions, computers, a music collection, a fur coat and possibly some paintings and a gold earring.[6]

---

[6] On Schedule B, Debtor also listed a vehicle, cash, two bank accounts, non-publicly traded stock and an interest in a life insurance policy. These were all claimed as exempt on Schedule C, with the exception of the cash and $1,500 of the car's value. There were no allegations that Debtor was unable to access the cash or the vehicle.

But in the Itemization she filed in support of her request for damages, Debtor sought reimbursement of hotel costs, food, clothes and medicine, as well as the value of a missing Movado watch[7]  The clothes and the Movado watch[7] are not listed on Schedule B, so although they were not exempted on Schedule C, they were never property of the estate.  More to the point, Debtor does not connect the dots to explain why hotel, food and medical expenses are actual damages resulting from control over those items that remained property of the estate.

Indeed, the most logical explanation for the hotel expenses is that Debtor had been evicted from the Maywood Property and could no longer reside there.  Whether or not she had access to certain electronics, a music collection, paintings, a fur coat and a piece of jewelry – none of which she mentions in the Stay Violation Motion – would have no effect on her need for housing.  And the basis of her requirement for housing was the eviction, which occurred only after the Bank obtained relief from the stay to exercise its nonbankruptcy remedies.

Consequently, Debtor has not established that to the extent there was property of the estate over which the Bank exercised control, she was injured by any willful violation of the automatic stay.  Therefore, the Stay Violation Motion must be denied.

### C.  Additional Bases for Denial of the Stay Violation Motion

In addition to the court's conclusion that Debtor did not establish any injury as a result of the Bank's control over any property of the estate, there are a number of other reasons to deny the Stay Violation Motion.  First, "[t]he Court has found no instances where a debtor has been permitted to recover damages for a stay violation against estate property after 11 U.S.C. § 362(c)(3)(A) has operated to terminate the stay as to the debtor and property of the debtor."

---

[7] Debtor states in the Itemization that "the Debtor Antoinette Pinson's spouse experienced a burglary in which the Pinson's have discovered a man's Movado watch with a replacement value of nine hundred and ninety-five dollars ($995.00) was stolen."  Itemization at ¶ 11.  If the Movado watch belonged to Debtor's Husband, that explains why it was not listed on Schedule B.  It could never have become property of Debtor's estate if she did not own it.

10

*Moore v. Reis (In re Moore)*, 631 B.R. 764, 782 (Bankr. W.D. Wash. 2021), *aff'd*, 2021 WL

5824383 (W.D. Wash. Dec. 8, 2021), *aff'd sub nom. Moore v. Flagstar Bank, FSB*, 2023 WL

3092303 (9th Cir. Apr. 26, 2023).  The only case Debtor cited in support of her recovery of

damages is *Jones*.  However, the *Jones* court did not award damages.  The debtor had requested

only declaratory relief or, in the alternative, an extension of the stay.

Second, this court granted relief from the stay to the Bank on April 17, 2023.  Therefore,

this case does not involve only termination of the stay by expiration, but also termination of the

stay by court order permitting a creditor to pursue its remedies.  The Bank obtained relief from

the stay to pursue its nonbankruptcy remedies as to the Maywood Property.  That would include

eviction from the Maywood Property, which is mentioned in the Bank's motion.  To the extent

eviction involved denying access to any property of the estate that remained in the Maywood

Property, it is plausible to conclude that this is within the Bank's nonbankruptcy remedies, for

which it obtained relief from the stay.  *See Rose*, 945 F.3d at 231 ("even if the automatic stay

remains in effect with respect to the bankruptcy estate—as is the case under our interpretation of

§ 362(c)(3)(A)—creditors can still obtain judicial relief under § 362(d) if circumstances demand

it").  Debtor cited no authority to the contrary.

Finally, Debtor lost ownership of the Maywood Property in the spring of 2022, and she

was not evicted until November 2023.  Around the time of the eviction, the Bank engaged a

property management firm that attempted to work with Debtor on retrieving her personal

property.  According to Olszewski's declaration, he emailed Debtor's counsel shortly after the

eviction and communicated several times with Debtor's Husband regarding retrieval of their

personal belongings.  When the parties finally agreed on a date, Olszewski's company was

11

present, but Debtor's Husband arrived without a moving company and requested access only to retrieve small items.  Yet Debtor filed the Stay Violation Motion the next day.

Debtor submitted no evidence to contradict Olszewski's sworn statement.  It appears, therefore, that any significant delay in retrieving the personal property, whether or not it remained property of the estate, was attributable to Debtor and Debtor's Husband, not a willful violation by the Bank.

**IV.   CONCLUSION**

Since Debtor had a prior case pending within the past year that was dismissed, the automatic stay terminated thirty days after Debtor filed this chapter 13 bankruptcy case.  It is irrelevant as to whether or not the stay terminated only as to the Debtor and property of the Debtor, or also as to property of the estate, because Debtor did not establish that she was injured by the Bank's control over property of the estate.

For all of the reasons stated above, **IT IS ORDERED THAT** the Stay Violation Motion is **DENIED**.

ENTERED:

Date:   February 3, 2025

_____
DAVID D. CLEARY
United States Bankruptcy Judge